**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| Deutsche Bank National Trust Company, ) | C/A No. 2:05-CV-2449-DCN |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| Thomas H. Tyner and Jennifer C. Tyner ) | **ORDER** and **OPINION** |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |
| Thomas H. Tyner and Jennifer C. Tyner, ) | |
| individually and as representatives of a class ) | |
| of individuals similarly situated, ) | |
| ) | |
| Third Party Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| Ameriquest Mortgage Company, et al., ) | |
| ) | |
| Third Party Defendants. ) | |
| ) | |

**I. Background**

Plaintiff Deutsche Bank initiated this action in state court to quiet title, for a declaratory judgment, and to foreclose a mortgage encumbering real property of defendants/third-party plaintiffs Thomas and Jennifer Tyner (the "Tyners"). The Tyners, individually and as representatives of a putative class, filed their First Amended Answer, Counterclaims, and Third-Party Complaint (the "Third-Party Complaint,") naming Ameriquest and Laura Shay, among others, as third-party defendants. Ameriquest removed the case to federal court under 28 U.S.C. §§ 1332 and 1446.[1] Deutsche Bank

---

[1] Third-party defendant Shay did not join in removal.

and Ameriquest moved to strike and to dismiss, and at an October 24, 2005 motion hearing, this court requested that the parties brief the following issues: 1) whether the third-party complaint was proper under Federal Rule of Civil Procedure 14; 2) whether the class was properly added as a third-party plaintiff; and 3) whether the action was properly removed. The Tyners have addressed these issues in a motion to remand, and Ameriquest has responded.

## II. Facts

In the fall of 2002, Thomas Tyner was diagnosed with cancer that was believed to be terminal. Facing financial problems, the Tyners decided to place their home into a trust. They were put in touch with Samuel Spann and Laura Shay, employees of Ameriquest, to handle the transaction of paying off their existing mortgage and to draft a deed and other loan documents for the purpose of placing the Tyner home into Spann's name as trustee. The Tyners were responsible for making monthly payments to Spann, who would then pay Ameriquest. However, when the closing occurred, the deed was prepared so that the property went directly to Spann instead of to Spann as trustee. Employees of Ameriquest who were not attorneys closed the transaction.

When the Tyners sought to have their house transferred back to them, Ameriquest required the Tyners to refinance the note on the house. Shay was to prepare all of the documents. The Tyners were allegedly told that there would be no pre-payment penalty and that the closing costs would be set at a certain low amount; however, the day before closing, Ameriquest informed the Tyners that there would in fact be a pre-payment penalty and the closing costs would be nearly twice the amount that had originally been

quoted. The Tyners went through with the closing, but the new deed transferring the property back to them was never filed.

The Tyners allege that they had agreed to make their monthly payments by automatic withdrawal. Several months after the closing, Ameriquest notified the Tyners that there was a problem with the title to the property, and Ameriquest stopped accepting the Tyners' automatic withdrawal. Thomas Tyner then mailed a monthly payment to Ameriquest, but the payment was returned to him.

It was not until the Tyners had a contract to sell their house that they learned that the title to their property was still held in Spann's name. Because the Tyner home was in Spann's name individually, judgment creditors were able to attach their claims to the home for the purpose of satisfying Spann's personal debts. Defendants learned that there were various judgments and liens against Spann placed on their property while he was purportedly holding it for them in trust.

When Deutsche Bank, an assignee of the note and mortgage, brought an action to foreclose on the Tyners' property, the Tyners counterclaimed against Deutsche Bank and appended a third-party claim against Ameriquest, seeking injunctive relief and alleging negligence/gross negligence, unjust enrichment, conversion, negligent misrepresentation, civil conspiracy, breach of the covenant of good faith and fair dealing, violations of the South Carolina Unfair Trade Practices Act, and breach of contract.

## III. Analysis

Plaintiffs have moved to realign the parties and to remand the case to state court. In support of their motion to realign, the Tyners claim that defendants Ameriquest and

Shay must be parties to the suit in order to provide the Tyners complete relief. The Tyners argue that Ameriquest and Shay could properly be made parties to the suit under either Federal Rules of Civil Procedure 14 (Third-Party Practice) or 19 (Indispensable Parties). Because this court finds that the third-party class claims were improper, the case must be remanded to state court for lack of diversity under 28 U.S.C. §1332, and the issue of realignment need not be addressed.

A.  Tyners' Individual Third-Party Claims against Ameriquest and Shay.

Rule 14 of the Federal Rules of Civil Procedure provides that a defendant, "as a third-party plaintiff," may bring an action upon a "person not a party to the action who is or may be liable to the third-party plaintiff for all or part of plaintiff's claim." Fed. R. Civ. P. 14(a). This rule is to be "liberally construed" in order to achieve its purpose of "accomplish[ing] in one proceeding the adjudication of the rights of all persons concerned in the controversy and to prevent the necessity of trying several related claims in different lawsuits." U.S. v. Accord, 209 F.2d 709, 712 (10th Cir. 1954).

A third-party defendant's liability under Rule 14 must be secondary or derivative to the defendant's liability to the plaintiff. Scott v. PPG Indus. Inc., No. 89-2362, 1990 WL 200655, * 3 (4th Cir. Dec. 13, 1990). Defendants' third-party complaint against third-party defendants, Ameriquest and Shay, alleges various claims including negligence, unjust enrichment, conversion, negligent misrepresentation, civil conspiracy, breach of contract, and violations of the South Carolina Unfair Trade Practices Act. (Defs.' Answer and Counterclaims and Third-Party Compl. ¶¶ 165-93.) To be proper, the third-party complaint must allege that Ameriquest and Shay's liability is dependent

on the outcome of plaintiff Deutsche Bank's claim against the Tyners or that Ameriquest and Shay are secondarily liable to the Tyners.

Black's Law Dictionary defines derivative liability as "liability for a wrong that a person other than the one wronged has a right to redress." Black's Law Dictionary 926 (7th ed. 1999). Secondary liability is defined as "liability that does not arise unless the primarily liable party fails to honor its obligation." Id.  As a Virginia district court explained in Watergate Landmark Condo. Unit Owners' Ass'n v. Wiss, Janey, Elstner Assoc., Inc., 117 F.R.D. 576 (E.D. Va. 1987), a third-party claim is only viable "where a proposed third-party plaintiff says, in effect, 'If I am liable to plaintiff, then my liability is only technical or secondary or partial, and the third-party defendant is derivatively liable and must reimburse me for all or part . . . of anything I must pay plaintiff.'"  117 F.R.D. 576, 578 (E.D. Va. 1987).

In Farmers Prod. Credit Ass'n of Oneonta v. Whiteman, 100 F.R.D. 310 (N.D.N.Y. 1983), a New York district court held that derivative liability existed where defendants' third-party complaint asserted that the third-party defendants' misrepresentations induced the defendants to give the note and mortgage to the plaintiffs. The court stated that "[i]n general, one who by fraudulent representations induces another to act to his damage is liable for the damages suffered, . . . and a third person as well as a vendor is liable for misrepresentations inducing the purchase of property."   100 F.R.D. 310, 313 (N.D.N.Y. 1983).

Additionally, in Eastman Kodak Co. v. McAuley, 2 F.R.D. 21, 23 (S.D.N.Y. 1941), the defendant was permitted to add a third-party defendant on allegations of a

conspiracy on the part of the plaintiff and third-party defendant in violation of the Sherman and Clayton Acts.  2 F.R.D. at 23.  The Eastman Kodak court stated that this third-party action was allowed "in order that 'circuity of action may be avoided, and that disputed jural relationships 'growing out of the same matter' be resolved in one action.'"  Id. (quoting Balcoff v. Teagarden et al., 36 F.Supp. 224, 225 (S.D.N.Y. 1940)).

In Farmers Production Credit Association of Oneonta and Eastman Kodak, the two courts found that third-party complaints based on theories of misrepresentation and conspiracy were allowed under Rule 14.  The Tyners include similar assertions in their third-party complaint, and they explicitly argue that Ameriquest and Shay are derivatively liable if it is determined that Deutsche Bank is entitled to foreclose on the mortgage.[2]  Because the Tyners allege that Ameriquest and Shay are derivatively liable, their  individual third-party claims are proper under Rule 14.  As a result, it is unnecessary to reach the argument that Ameriquest and Shay could be added under Rule 19 as indispensable parties.

B.  Tyners' Class Claims against Ameriquest, Shay, and Others.

While the Tyners' individual third-party claims against Ameriquest and Shay are proper under Fed. R. Civ. P. 14, the third-party class claims are not allowed.  In American Telephone and Telegraph Co. v. United Research Lab., Inc., No. 93-CV-5347,

---

[1] Peculiarly, rather than arguing that the third-party complaint against them is improper, Ameriquest also argues that the third-party complaint complies with the derivative liability requirement of Rule 14 in their Response to the Tyners' Motion to Realign the Parties and to Remand

1994 WL 325932 (E.D. Pa. June 29, 1994),[3] a Pennsylvania district court held that the defendant must be permitted to pursue its <u>individual</u> third-party claims to the extent that the third-party defendant may be secondarily or derivatively liable.  Regarding the third-party class claims, the court stated:

> [I]t is simply impermissible, under the Federal Rules of Civil Procedure, to include class-action allegations in a third-party complaint.  Under third-party practice, the defendant is entitled to join third-party defendants who may be liable for all or part of the claim asserted by plaintiff against the defendant/third-party plaintiff, but Fed. R. Civ. P. 14 does not contemplate assertion of any other kind of claim in a third-party complaint.  And it seems clear that it would be improper to attempt to assert "supplemental jurisdiction" under 28 U.S.C. § 1367, as to the claims of class members other than the third-party plaintiff, since it cannot be said that such claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution;" and for the further reason that the class-action aspects would substantially predominate over the individual claims, so that the court should decline to exercise supplemental jurisdiction in accordance with 28 U.S.C. §1367(c).

<u>American Telephone and Telegraph Co.,</u> 1994 WL 325932 at * 2.

While this court recognizes that <u>American Telephone and Telegraph Co.</u> is not controlling on this issue, it is persuaded by the reasoning of the Pennsylvania district court.  Additionally, although the Fourth Circuit has allowed a third-party plaintiff to recover from a third-party defendant a  "sum greater than that sued for by the original

---

[2] In their response, Ameriquest distinguishes another Pennsylvania case, <u>Pagnotti Enterps., Inc. v. Beltrami,</u> 787 F.Supp. 440 (M.D. Penn. 1992), which it incorrectly assumed was <u>American Telephone and Telegraph Co.</u>, mentioned during the October 24, 2005 motion hearing.  <u>Pagnotti</u> concerned very different issues than those that are present in this case and held that the new third-party plaintiff was properly joined because it met intervention requirements.  In addition, judicial economy compelled the court to accept the new party as a third-party plaintiff because they had an interest in the litigation.

plaintiff," Noland Co. v. Graver Tank and Mfg. Co., 301 F.2d 43, 49-50 (4th Cir. 1962), the court reasoned that:

> [i]t is readily apparent that the facts supporting [third-party plaintiff's] ancillary claim for loss of anticipated profit are *substantially the same* as those developed in the trial of the primary questions - whether [third-party plaintiff] breached a contract with [plaintiff] and whether that breach was in turn cause by [third-party defendant's] breach of its contract with [third-party plaintiff].

Id. at 50.  The court noted: "Situations might arise where independent claims between a third-party plaintiff and a third-party defendant, even though growing out of the same transactions involved in the original action and the claim of right to indemnification, could not be litigated expeditiously and without serious or seemingly endless complications.  However, through usual and approved pre-trial procedures, the District Court could ascertain and foresee with relative ease and minimum effort any such complications."  Id.

The Tyners' third-party class claims against Ameriquest and Shay assert a national class-action seeking millions of dollars.  These additional claims do not stem from facts that are "substantially the same" as the primary issues in this case, and they likely will not be litigated "expeditiously" or without serious delay.  The Tyners' third-party class claims are improper and must be dismissed.

C.  Without the Class Action, Remand is Proper

Ameriquest removed this case pursuant to 28 U.S.C. § 1453, which provides that "[a] class action may be removed to a district court . . . by any defendant without the consent of all defendants."  28 U.S.C. § 1453(b).  If the third-party class claims were proper, this court would have jurisdiction under 28 U.S.C. §1332(d)(2)(A), which

8

provides for minimal diversity where any member of a class of plaintiffs is a citizen of a state different from any defendant. However, because the class claims are not allowed, Ameriquest may not remove this case under section 1453.

While diversity does seem to exist between Deutsche Bank and the Tyners, Ameriquest may not remove the case pursuant to section 1441. Courts have disallowed third-party defendants to remove cases based on diversity jurisdiction under 28 U.S.C. §1441. See, Florence v. ABM Industries, 226 F. Supp. 2d 747 (D.Md. 2002). Unlike section 1453 which allows *any* defendant to remove the case, section 1441 states that diversity cases under section 1332 may be removed "by the defendant or by the defendants." § 1441(a). Courts have interpreted this distinction to mean that only the original defendant may remove diversity cases. See Florence, 226 F.Supp.2d at 749. Because the original defendants, the Tyners, do not want to remove the case to federal court, and Ameriquest cannot remove the case, this court does not have jurisdiction.

**IV. Conclusion**

It is therefore,

**ORDERED**, for the foregoing reasons, that defendants' motion to remand is **GRANTED**.

**AND IT IS SO ORDERED**.

_____
**David C. Norton**
**United States District Judge**


**January 10, 2006**
**Charleston, South Carolina**

9